Filed 11/7/25  Wiknich v. Blades CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THOMAS R. WIKNICH,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KYLE BLADES,<br><br>Defendant and Respondent. | F089551<br><br>(Super. Ct. No. BCM-24-001013)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Thomas R. Wiknich, in propria persona, for Plaintiff and Appellant.

No appearance filed on behalf of Defendant and Respondent.

-ooOoo-

---

\*       Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

This appeal arises from an election contest brought by Thomas Wiknich against Kyle Blades, in the Kern County Superior Court.  Both parties were self-represented in the trial court.  Wiknich, the appellant, is self-represented on appeal.  Blades, the respondent, did not appear on appeal.

Wiknich's election contest related to a municipal general election held in November 2024, for two seats on the City Council of Ridgecrest.  Three people—Wiknich, Blades, and Solomon Rajaratnam—ran for two open city council seats.  Blades placed first, Rajaratnam second, and Wicknich third in the election.  Blades and Rajaratnam were subsequently seated on the city council.

Wiknich asserted that Blades was ineligible to run for election under a municipal term limits law.  Wiknich sought an order removing Blades from the city council and seating Wiknich in his place.  The trial court held an election contest hearing.  The court determined there were no grounds for the election contest and that Blades was eligible to run in the November 2024 city council election and to currently hold the office of member of the Ridgecrest City Council.  Thereafter, the court entered judgment "confirming the election."

Wiknich appealed.  We affirm.

## BACKGROUND

### *Wiknich Initiated an Election Contest by Filing an Affidavit*

On December 9, 2024, Wiknich initiated the instant case by filing an "affidavit" regarding the "ineligibility of … Blades" as a "Ridgecrest City Council [c]andidate of the 2024 Ridgecrest City Council [e]lection."  (Some capitalization omitted.)  Wiknich asserted that a "Ridgecrest City Council election was held on November [5], 2024."  He added that three candidates were on the ballot for "two open City Council positions."  Blades and Rajaratnam were elected to the city council seats at issue.  Wiknich placed third in the election.  City council terms are normally four years in duration.

2.

Wicknich noted in his affidavit that Blades had served on the Ridgecrest City Council prior to the November 2024 election.  Specifically, Blades was appointed to the city council in December 2019 and served for one year in an appointed capacity.  Subsequently, in an election held in November 2020, Blades was elected to a full four-year term.  Wiknich further noted in the affidavit:  "The current Ridgecrest [t]erm [l]imits Municipal Code section 2-25[, subdivision (c)] … states:  'Any person who has held the office of member of the City Council for [eight] consecutive years shall not be eligible to hold such office until at least two years have passed since such person last held such office.  In no event shall any person be eligible to serve as a member of the city council for more than eight consecutive years.' "  Wiknich added that Blades would have served eight years on the city council as of December 2027 and would therefore be ineligible to serve the last year of the four-year term to which he was elected in the November 2024 election.

In addition, Wiknich asserted in his affidavit:  "I am contesting the election because … Blades is in [v]iolation of Elections Code [section] 16440[, subdivision (a)] and Ridgecrest City Council [t]erm [l]imits Municipal Code [s]ection 2-25[, subdivision (c)].  Plaintiff is requesting the court to issue an order to declare [that] … Blades is ineligible to serve on the Ridgecrest City Council [for] this upcoming [four]-year term from 2024 [to] 2028."  Wiknich further stated in his affidavit:  "In conjunction, I am also requesting the court [to] order that [Wiknich], currently number [three] in the election results[,] now become number [two] in the election results and is eligible to be sworn in and serve as a member of the Ridgecrest City Council for the full term of four years [from] 2024 [to] 2028."

### Wiknich Filed Amended Motions to (1) Remove Blades from the City Council, and (2) Have Himself Declared Officially Elected

On January 17, 2025, Wiknich filed an amended motion to remove Blades from the City Council and an amended motion to have himself declared officially elected.

Wiknich's motions both stated: "Blades, was ineligible to run for Ridgecrest City Council for the 2024 [to] 2028 term.… [Blades] was in violation of [the Election Code and] the City of Ridgecrest Municipal Code [t]erm [l]imits [l]aw [section] 2-25 .… He is unable to fulfill the terms of the office as established by [the] current City of Ridgecrest [t]erm [l]imits law that only allows [eight] consecutive years to be served. He will have completed his eighth consecutive year in December 2027. He was sworn in for his first year on the Ridgecrest City Council in December … 2019." The motions also stated: "I am requesting that the court issue a judgement annulling the certificate of election issued to [Blades] at the December 18, 2024 City Council meeting .…" The motions further stated: "I am requesting that [I] be declared officially elected [as] having the highest number of legal votes other than [Blades] .…"

On January 28, 2025, the trial court held a hearing on Wiknich's amended motions. The court denied both amended motions as "procedurally improper." (Italics omitted.)

***Trial Court Held an Election Contest Hearing***

On February 6, 2025, the City of Ridgecrest filed an amicus letter, evidently in support of Blades. However, the amicus letter is omitted from the record on appeal provided by Wiknich.[1]

_____

[1]    Although the City of Ridgecrest's amicus letter is not in the record on appeal, it is reflected on the Register of Actions included in the clerk's transcript. Furthermore, the record contains another communication from Ridgecrest's City Attorney. Specifically, the record contains an email dated July 16, 2024, from Ridgecrest's City Attorney to Wiknich's wife, Shannon Wiknich. The email states:

> "The City is well aware of the [eight-]year term limit in the Ridgecrest Municipal Code. The language of our statute precludes a council member from serving more than [eight] consecutive years on the Council. Nothing in the Code prohibits a candidate from filing papers and participating in the election process. Local elections are a matter governed by the local agencies and they have the power to regulate such elections. The right to participate in the elections and to run for a public office is one

4.

Thereafter, on February 7, 2025, the trial court held an election contest hearing. Wiknich and Blades were present, each in a propria persona capacity; it appears that counsel for the City of Ridgecrest was also present. The court heard argument from the self-represented parties as well as counsel and took the matter under submission. The record on appeal, however, does not contain a reporter's transcript of the hearing.

On February 14, 2025, the trial court issued, via minute order, a written ruling, including findings of fact and conclusions of law. The court determined there were no grounds for the election contest and that Blades was eligible to currently hold the office of member of the Ridgecrest City Council. Accordingly, the court confirmed the election.

## *Trial Court's Written Ruling*

Specifically, the trial court's written ruling stated:

> "Plaintiff in this case … Wiknich seeks (1) an order removing … Blades from the Ridgecrest City Council including annulling the [c]ertificate of election; and (2) [d]eclaring [p]laintiff officially elected and … issued a certificate of election as member of the Ridgecrest City Council for the term of 2024 [to] 2028.

> "Plaintiff contends … Blades was appointed to the City Council and sworn in [in] December 2019 [citation]. He served a full year in 2019 [and 2020] and then he ran for [a] [four]-year term in November 2020. [Blades] won the election and was sworn in again [in] December 2020. Currently he is finishing year [five] and it will terminate in December … 2024. He will be [t]ermed [o]ut [in] December 2027[,] however he was still allowed to run for a term that ends in December 2028. He is ineligible and prohibited by law to serve from December 2027 to December 2028.

> "This case presents two principal issues:

---

of the fundamental rights protected by the Constitution. The City will not and cannot restrict access to that process to a person that is otherwise qualified to run for the office.… Blade[s], if elected, can serve the remainder of his [eight-]year term. If at that time the term limits in the Municipal Code remain unchanged by the voters, he can step down. If he does not, then he would be in violation of our statute. In summary, the City will not interfere with … Blades['] right to seek reelection, as our Code does not prohibit him from running for office."

(1)    Whether there are grounds for an election contest.

(2)    Whether … Blades is currently eligible to hold the office of member of the Ridgecrest City Council.

No Grounds for Election Contest

The trial court next addressed the first issue it had identified, that is, whether there were grounds for an election contest. The court noted that Elections Code section 16100, subdivision (b) expressly provides that an elector[2] may contest an election when "the person who has been declared elected to an office was not, at the time of the election, eligible to that office." (Underlining omitted.) The court added: "Plaintiff files this action pursuant to Elec[tions] Code[ section] 16100[, subdivision] (b), alleging that the person who has been declared elected to an office was not, at the time of the election, eligible to that office." But the court concluded: "*Here, … Blades was eligible to run for office at the time of the election.*" (Italics added.)

The trial court explained the reasoning underlying its conclusion. The court referenced Ridgecrest Municipal Code section 2-25, subdivision (c), which was cited by Wiknich and provides: "Any person who has held the office of member of the city council for eight consecutive years shall not be eligible to hold such office until at least two years have passed since such person last held such office. *In no event shall any person be eligible to serve as a member of the city council for more than eight consecutive years.*" (Italics added.) The court then observed: "At the time of the election in November 2024[,] … Blades had not reached eight consecutive years [as a member of the city council]. In November 2024[,] … Blades would be reaching [five] years. He will not reach his eighth year until December 2027." The court determined: "[Accordingly,] [t]here are no grounds for the election contest."

---

[2]    Section 321 of the Elections Code defines an "elector" as, among other things, "a person who is a United States citizen 18 years of age or older and … is a resident of an election precinct in this state on or before the day of an election." In other words, elector is basically synonymous with voter.

<u>Blades is Currently Eligible to Hold the Office of Member of City Council</u>

Thereafter, the trial court turned to the second issue it had identified at the top of its ruling, that is, whether Blades was currently eligible to hold the office of member of the Ridgecrest City Council. As an initial matter, the court addressed in detail the applicability of *Pope v. Superior Court* (2006) 136 Cal.App.4th 871, 873 (*Pope*) to the instant case; Wiknich had cited *Pope* in support of his position that Blades was not eligible to serve as a member of the City Council.

With regard to *Pope*, the trial court noted: "*Pope* held that a city term limit law referring to an election to a four-year term does not [encompass] appointment or election to a less than four-year term." The court then recited *Pope*'s facts and procedural history:

> "Harry Barovsky was elected to the Malibu city council for a four-year term April 1998 to April 2002.… Barovsky passed away in March 2000. In June 2000, Ms. Barovsky was appointed by the city council to serve as a council member in her late husband's place pending a special election. The special election was held in November 2000 and Ms. Barovsky was elected to the remaining 17-month term ending in April 2002.… She [then sought] reelection for a further four-year term, from April 2006 to April 2010."

Thereafter, four individuals "filed a mandate petition and complaint for declaratory relief and injunctive relief alleging Ms. Barovsky [was] ineligible to seek reelection under the city's term limit law." (*Pope*, *supra*, 136 Cal.App.4th at p. 874.) The trial court there granted the writ petition, prompting the Malibu City Clerk Lisa Pope and the City of Malibu to file a mandate petition with the appellate court "challenging the [trial court's] order removing Ms. Barovsky from the ballot." (*Ibid.*)

The *Pope* court observed: "The question before us is the proper construction of the Malibu city council term limit law. This is a legal issue subject to our de novo review. [Citations.] The proper interpretation of a municipality's written law is subject to our independent determination." (*Pope*, *supra*, 136 Cal.App.4th at p. 875.) *Pope* explained: "We find the meaning of the term limit law must be derived from its clear and

unambiguous words without resorting to indicia of the city council's or the voters' intent. It is well established that in determining the meaning of a statute, initiative, or ordinance, we first look to its words." (*Ibid*.) *Pope* added: "Ambiguous statutory language is that which permits more than one reasonable interpretation. [Citations.] Because, as discussed below, the language of the Malibu City Council term limit law is clear and unambiguous, we presume the city council and the voters intended the meaning apparent on its face and our inquiry ends there." (*Id*. at pp. 875–876.)

Malibu Municipal Code section 2.08.040 was the municipal law at issue in *Pope*. *Pope* noted: "There is nothing ambiguous about Malibu Municipal Code section 2.08.040. Its language permits only one reasonable interpretation. It clearly states, 'No person shall be *elected* as a member of the city council for more than two *four-year terms* ….' " (*Pope*, *supra*, 136 Cal.App.4th at p. 876.) *Pope* emphasized: "Elected does not mean appointed. Appointed means: chosen officially for a job or responsibility …." (*Id*. at p. 877.) *Pope* added: "Further, a 'four-year term' is a four-year term, not a 17-month term. The words 'four-year term' cannot reasonably be construed to mean less than a four-year term or a term of up to four years' duration." (*Ibid*.)

*Pope* concluded: "Ms. Barovsky was *appointed* by the city council to serve as a council member for approximately *five months*, from June 2000 to November 2000. She was *elected* to serve a remaining *17-month term*, from November 2000 to April 2002, pursuant to a special election. Ms. Barovsky was *elected* to serve one *four-year term*, from April 2002 to April 2006. Because she has been elected to date to serve only one four-year term, she is eligible, under Malibu Municipal Code section 2.08.040, for reelection to a second four-year term. Hence, the respondent court's ruling to the contrary, which was premised on voter intent materials, must, with respect, be set aside." (*Pope*, *supra*, 136 Cal.App.4th at p. 877.)

After summarizing *Pope* in detail as set forth above, the trial court, here, noted: "The *Pope* Court distinguished the time that Ms. Barovsky was appointed versus elected. The Malibu Municipal Code section 2.08.040 applicable in *Pope* states that 'No person shall be elected as a member of the city council for more than two four-year terms .…'" The court further stated: "The facts here are similar to *Pope*; however, the relevant municipal code is different. [¶] In the instant case, … Blades was appointed to the City Council in December 2019[, when] [t]he former seat occupied by Vice Mayor Wallace Martin became vacant upon his resignation. The City Council decided to determine Martin's replacement by appointment rather than by holding a special election.… Blades was appointed to take Martin's place and sworn in immediately on Dec. 4, 2019." The court continued: "Thereafter … Blades was elected to serve his first four-year term [from] December 2020 [to] December 2024.… Blades was elected to serve his second four-year term [from] December 2024 [to] December 2028. Following *Pope*, this would be fine because the applicable municipal code in *Pope* states that a person cannot be *elected* for *more* than two four-year terms. *In the instant case, however, the municipal code is different*." (Italics added.)

The trial court pivoted to the relevant section of the Ridgecrest Municipal Code. The court observed: "Plaintiff cites to the Ridgecrest Municipal Code, [a]rticle II—City Council, [section] 2-25[, subdivision] (c), which states … 'Any person who has held the office of member of the city council for eight consecutive years shall not be eligible to hold such office until at least two years have passed since such person last held such office. In no event shall any person be eligible to serve as a member of the city council for more than eight consecutive years.'" The court explained: "The City of Ridgecrest Municipal Code, unlike the City of Malibu[,] does *not* make a distinction between whether someone was appointed or elected as a member of the city council. The plain language of the Ridgecrest code suggests that a person cannot serve for more than eight consecutive years regardless of whether they are appointed or elected." (Italics

9.

added.)  The court further analyzed:  "However, at this juncture, … Blades has not reached eight consecutive years.  He will not reach his eighth year until December 2027. *The code does not suggest that … Blades cannot run for the city council, or must be removed before he reaches more than eight consecutive years.  The code states a person cannot serve more than eight consecutive years*."  (Italics added.)

Trial Court's Conclusion

The trial court ruled:  "The Court denies the Plaintiff's request to remove … Blades and declare himself officially elected.  Plaintiff has no grounds to contest the election.…  Blades was eligible to run at the time of the election.  In November 2024, … Blades had served [five] years."

The trial court added:  "Blades is eligible to hold the office of member of the city council no more than eight consecutive years.…  Blades will not reach his eighth consecutive year until December 2027.  Plaintiff cites to no authority that suggests this Court should remove … Blades before he reaches the eighth consecutive year."

The trial court concluded:  "For the reasons discussed herein, the Court's judgment is to confirm the election.  [¶]  Judgment will be entered separately."

The same day, judgment was entered "confirming the election."  Wiknich's appeal followed.

## DISCUSSION

### I.    Trial Court Properly Denied the Election Contest and Properly Declined to Remove Blades from Office and Install Wiknich in His Place

Wiknich challenges the trial court's ruling and judgment confirming the election. We affirm the court's ruling and judgment.

Wiknich's argument in the trial court hinged primarily on the City of Ridgecrest Municipal Code, article II, section 2-25, subdivision (c).  As previously noted, this term limits provision states:  "Any person who has held the office of member of the city council for eight consecutive years shall not be eligible to hold such office until at least

two years have passed since such person last held such office.  In no event shall any person be eligible to serve as a member of the city council for more than eight consecutive years."

"The proper interpretation of a municipality's written law is subject to our independent determination."  (*Pope*, *supra*, 136 Cal.App.4th at p. 875.)  Accordingly, we review de novo the trial court's construction of the term limits provision of the Ridgecrest Municipal Code.  We conclude the term limits provision at issue is clear and unambiguous and thus our inquiry ends with interpreting its plain language.  As relevant here, the term limits provision clearly precludes any person from *serving* on the city council for *more* than eight consecutive years.

As discussed above, the trial court ruled:  "The [municipal] code [provision] does not suggest that … Blades cannot run for the city council, or must be removed *before* he reaches more than eight consecutive years.  The code states a person cannot serve *more* than eight consecutive years."  (Italics added.)  We agree with the court's interpretation.

Here, Blades had served as a member of the city council for five consecutive years when he was reelected in the November 2024 election to serve another four-year term.  Under the plain language of the Ridgecrest Municipal Code's term limits provision, Blades can only serve three years of his current four-year term.

Wiknich complains that the trial court did not consider a resolution passed by the Ridgecrest City Council on July 17, 2024.  Wiknich provided the court with an unsigned and uncertified copy of the city council's resolution.  Wiknich points to a provision of the resolution that states:  "Pursuant to the requirements of the laws of the State of California relating to General Law Cities, there is called and ordered to be held in the City of Ridgecrest, California, on Tuesday, November 5, 2024, a General Municipal Election for the purpose of electing one Mayor for a term of two years and two Members of the City Council, each for the full term of four years."

11.

However, this provision of the resolution merely clarified that the November 5, 2024 city council election was a general election rather than a special election and that each of the seats at issue was open for a full four-year term.  In other words, the election was *not* called to elect members to serve out the *remainder* of existing terms of members who had prematurely left their positions on the city council.  Rather, the election was for city council seats that were open for full four-year terms.  To the extent Wiknich suggests that this provision of the resolution somehow precluded Blades from standing for election, or made him ineligible to stand for election in November 2024, his contention is unsupported and unpersuasive.

In sum, as the trial court noted, Wiknich "cites to no authority that suggests [the courts] should remove … Blades before he reaches the eighth consecutive year" of his service as a member of the Ridgecrest City Council.  Accordingly, we affirm the judgment of the court confirming the election.  (See *Pope*, *supra*, 136 Cal.App.4th at p. 876 ["the right to serve in a public office is a fundamental right of citizenship that cannot be restricted except by a clear declaration of law"].)

## DISPOSITION

The judgment is affirmed.  Each party to bear his own costs on appeal.